UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW CLINTON DAVIS,

      Plaintiff,

v.                                     Case No. 1:20-cv-903
                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On June 13, 2018, plaintiff filed an application for DIB, alleging a disability onset date of September 1, 2017. PageID.53. Plaintiff identified his disabling conditions as: multiple sclerosis, anxiety, and depression. PageID.219. Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a warehouse supervisor, inspector, and material handler. PageID.62, 220. An administrative law judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on October 30, 2019. PageID.53-64. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I.      LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff met the insured requirements of the Social Security Act through December 31, 2018.  PageID.55.  The ALJ also found that plaintiff did not engage in substantial gainful activity from his alleged onset date (September 1, 2017) through his date last insured.  *Id.*  "[I]nsured status is a requirement for an award of disability insurance benefits."  *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984).  Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2018, he cannot be found disabled unless he can establish that a disability existed on or before that date.

> "Evidence of disability obtained after the expiration of insured status is generally of little probative value."  *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004).  Indeed, post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Cornette v. Sec'y of Health and Human Servs.*, 869 F.2d 260, 264 n. 6 (6th Cir. 1988); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

*Grisier v. Commissioner of Social Security*, 721 Fed. Appx. 473, 477 (6th Cir. 2018).

At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of multiple sclerosis and obesity.  *Id.*  At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.56.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can stand and/or walk for a total of four hours in an eight-hour-workday. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but can never climb ladders, ropes or scaffolds. He can frequently handle with the right upper extremity, and occasionally

> operate foot controls with the right lower extremity. He can never be exposed to extremes of heat or work around hazards such as unprotected heights or unguarded, moving machinery. Due to complaints of fatigue, the claimant is limited to understanding, remember, and carrying out only simple instructions and tasks.

PageID.57.  The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work.  PageID.62.

At the fifth step, the ALJ found that through the date last insured, plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.63-64. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as garment sorter (55,000 jobs), mail clerk (51,000 jobs), and router (53,000 jobs).  PageID.63.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 1, 2017 (the alleged onset date) through December 31, 2018 (the date last insured).  PageID.64.

## III.    DISCUSSION

Plaintiff has raised two errors on appeal.

### A.    The ALJ failed to evaluate Dr. Robens' opinion according to the appropriate standards and regulations requirements.

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1)

supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[1]  If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this

---

[1]   The regulations explain "supportability" in the following terms:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  In addition, the regulations explain "consistency" in the following terms: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

As one court observed, "[t]hese new regulations plainly are less demanding than the former rules governing the evaluation of medical source opinions, especially those of treating sources." *Hardy v. Commissioner of Social Security*, 554 F. Supp. 3d. 900, 906 (E.D. Mich. 2021). Nevertheless, the new regulations set forth a minimum level of articulation for a reviewing court. *Id*.

Plaintiff contends that the ALJ did not follow this standard in evaluating the opinions of his neurologist Cornelius Robens, M.D. The ALJ addressed the opinions as follows:

> The evidence reflects that Dr. Robens provided a Medical Source Statement (MSS), dated October 2, 2018. In this MSS, Dr. Robens notes his opinions that the claimant would miss more than five days of work per week, could lift no more than five pounds, could never stoop or climb, could only infrequently walk, could occasionally stand, and could frequently sit. He also felt that the claimant could only infrequently use his hands for fine or gross manipulation, could occasionally raise his left arm over his shoulder and could never raise his right arm over his shoulder. He also felt that the claimant's pain would cause him to be off-task 30% of the time and would need to lie down and take unscheduled breaks during the day (Exhibit 4F). I have considered these opinions in the formulation of the claimant's residual functional capacity, but does [sic] not find it to be entirely persuasive as the medical evidence, including the treatment notes of Dr. Robens, discussed in detail herein do not support the extreme limitations contained in this MSS. More specifically, the evidence does not reflect that the claimant has any abnormality relating to his left extremities as they have consistently been noted to have normal strength. In addition, the physical exams of Dr. Robens note only mild weakness on the right side and do not support a finding that the claimant can lift no more than five pounds and can infrequently walk. The medical evidence supports limiting the claimant to less than the full range of light work with exertional, postural, manipulative, and environmental limitations, but does not provide support that the claimant would miss more than five days of work, be off-task 30% of the time or require unscheduled breaks or the need to lie down during the day.

PageID.59-60.

Plaintiff contends that the ALJ erred in finding that "the physical exams of Dr. Robens note only mild weakness on the right side and do not support a finding that [Plaintiff] can

lift no more than five pounds and can infrequently walk."  Plaintiff's Brief (ECF No. 16, PageID.453).  On August 27, 2018, during the relevant time period, Dr. Roberts characterized the same result as mild weakness, *i.e.*, "normal strength in all limbs except for mild weakness of right hand grip and right iliopsoas (4+/5)". PageID.317.  Plaintiff points out that Dr. Robens' treatment note from May 2019, about five months after the date last insured, indicates that plaintiff had normal strength except for a "marked weakness" of right-hand grip and right iliopsoas of 4+/5 (PageID.351) and that the ALJ erred characterizing this as only a "mild weakness".  *Id*.  Dr. Robens' characterization of this test result is inconsistent.

The ALJ did not err by using Dr. Robens' characterization of "mild weakness" made during the relevant time period, *i.e.*, on or before December 31, 2018.  "[I]nsured status is a requirement for an award of disability insurance benefits."  *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984).  Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2018, he cannot be found disabled unless he can establish that a disability existed on or before that date.

> "Evidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 845 (6th Cir. 2004). Indeed, post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Cornette v. Sec'y of Health and Human Servs.*, 869 F.2d 260, 264 n. 6 (6th Cir. 1988); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

*Grisier v. Commissioner of Social Security*, 721 Fed. Appx. 473, 477 (6th Cir. 2018).

Next, plaintiff contends that "the ALJ's allegation that Plaintiff could not be limited to infrequent walking is unsupported by the record."  Plaintiff's Brief at PageID.454.  On February 21, 2018, Dr. Robens found that plaintiff's "neurological exam primarily demonstrates bradykinesia and incoordination of the right arm and leg while strength actually appears fairly

preserved." PageID.331.  In this regard, plaintiff points to the record which indicates that he was

dragging his right leg, *e.g.*, reports gait changes with dragging of the right leg (PageID.322) (May

2018), generally steady gait with dragging of his right leg (PageID.317) (Aug. 2018), and reports

dragging his right leg (PageID.354) (Nov. 2018).  All of these reports occurred during

examinations performed before plaintiff's date last insured.

Consultant Michael J. Simpson M.D. examined plaintiff on January 12, 2019 (12

days after his date last insured).  The ALJ addressed Dr. Simpson's evaluation as follows:

> At this time, he was noted to be cooperative with normal speech. He had a mild to moderate limp on right with mild foot drop on the right. However, he did not require the use of any assistive devices for ambulation. His pupils were equal and reactive to light. Exam of his upper arm and forearm revealed a slight decrease on the right versus the left and a slight decrease in the circumference of the right calf versus the left. He had only modestly diminished grip strength as measured with Jamar Dynomometer testing. His dexterity was also unimpaired. He was able to pick up a button, button clothing, and open a door. He had moderate difficulty in heel and toe walking and mild difficulty squatting. He had normal range of motion of all joints and no joint instability or effusion. His motor strength was 5-/5 in the right upper extremity, 5-/5 in the right calf plantar flexors, and 4/5 in the right calf dorsiflexors. Romberg test was negative. He did have some diminished sensation in the right, upper extremity, but was able to perform finger-to-nose testing adequately. Babinski was upgoing on the right, but normal on the left. He had 3-4+ reflexes on the right and 2+ reflexes on the left. The assessment included MS (Exhibit 5F). Although there were no clear functional limits specified, I gave specific consideration to the physical examination findings of Dr. Simpson when formulating the claimant's residual functional capacity.

PageID.60.  Notably, Dr. Simpson evaluated plaintiff after the date last insured.  Even at that time,

the doctor concluded that "[t]he patient is able to ambulate without the use of any other assistive

device." PageID.347.  In short, while plaintiff had a limp, he did not require the use of an assistive

device.

Based on this record, the ALJ's finding that Dr. Robens' findings were not entirely

persuasive, specifically with respect to the extent of right-side weakness and the need to walk

infrequently, is supported by substantial evidence.  "The findings of the Commissioner are not

subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).   "This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Id*. at 773 (6th Cir. 2001).  Accordingly, plaintiff's claims of error are denied.

> **B.     The ALJ's decision is unsupported by substantial evidence because of the mischaracterization of the medical record.**

In evaluating the medical evidence, the ALJ concluded that, "MRI studies have demonstrated some abnormalities, but have been stable and do not demonstrate any active demyelinating processes as discussed above."  PageID.61.  Plaintiff contends that the ALJ's conclusion is not supported by the record.  Plaintiff's Brief at PageID.457.  Plaintiff's contention is without merit.

An MRI from February 15, 2018, included the following impression,

> Nonspecific white matter signal change slightly greater than expected for patient age as described above.  This most commonly reflects chronic microvascular ischemia.  Though additional etiology such as demyelinating disease should also be considered in the appropriate clinical setting.

PageID.427-428 (as amended).  On March 13, 2018, Dr. Robens concluded that "imaging with brain MRI demonstrates white matter lesions possibly suggesting a demyelinating process."  PageID.331.

Some weeks later, on May 2, 2018, the doctor expressed the opinion that plaintiff had demyelinating disease:

> Andrew Davis is suffered a sofar single demyelinating episode.  It appears that the symptoms have over time not necessarily been stable.  The brain MRI by report demonstrated "nonspecific" white matter changes.  However, these appear more numerous and larger to suggest chronic microvascular disease.  The MRI findings and my opinion are more consistent with a demyelinating process.  There were no demyelinating lesions in the cervical or thoracic spine.  The CSF examination has now further suggested a demyelinating process with elevation of oligoclonal

banding.  I have also offered him a referral for a "second opinion" which he has now declined.  We had a long discussion about the diagnosis and treatment options. Since the initial clinical episode was already relatively asymptomatic and he is experiencing abnormal MRI findings he feels strongly that he wishes to start disease modifying treatment.  We discussed the options again.  For now he wants to avoid using an injectable medication.  Among the oral treatments we agreed on using Aubagio.  We discussed that we will likely repeat an MRI of the brain later this year (within a few months of starting Aubagio).

PageID.323 (treatment notes unedited).

On November 28, 2018, prior to the date last insured, Dr. Robens noted that "[i]t appears objectively that the disease has remained stable without exacerbations or objective progression." PageID.355.  The ALJ addressed this finding:

On November 28, 2018, the claimant reported no improvement of his symptoms and continuing difficulty using his right arm for fine motor movements. He was also noted to be dragging his right leg. It was noted that he was tolerating his new medication without side effects.  He reported difficulty sleeping and some depression due to his symptoms. On exam, he was again noted to have normal muscle strength except for mild weakness of the right hand. He had no tremor and a generally steady gait, but continued to drag his right foot. His cranial nerves remained intact and his concentration, speech, and fund of knowledge were all intact. He was also alert and oriented to person, place, and time. The assessment included MS and it was noted that the disease was stable without exacerbations or objective progression. It was felt that the lack of improvement was secondary to lack of activity by the claimant and he was referred for physical therapy. A repeat MRI was planned for the following year (Exhibit 6F/6-7).

PageID.60.

An MRI performed on April 27, 2019, about four months after plaintiff's date last insured, included the impression,

Stable multiple white matter signal change, demonstrating a pattern and distribution compatible with demyelinating disease.  No evidence of new lesion or active demyelination.

PageID.364.  The ALJ referred to this result, stating that "[a] repeat MRI of the claimant's brain was performed on April 27, 2019, and demonstrated stable multiple white matter signal change

compatible with demyelinating disease with no evidence of any new lesions or active demyelination (Exhibit 7F/6)." PageID.61.

        During the relevant time period, Dr. Robens' found that the disease appeared to remain stable without exacerbations or objective progression.  The ALJ included this finding in the decision.   Accordingly, plaintiff's claim of error is denied.

       **IV.**    **CONCLUSION**

        For these reasons, the Commissioner's decision will be **AFFIRMED**.  A judgment consistent with this opinion will be issued forthwith.

Dated:  September 13, 2022              /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge